Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Monday, November 23, 2009 12:41:30 PM

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:                                )
                                      )
ERIC D. SMITH                         )   Case No. 09-691
                                      )
     Debtor.                          )   Chapter 7

## MEMORANDUM OPINION

The United States Trustee (the "USTE") seeks to dismiss the Chapter 7 bankruptcy case of Eric D. Smith (the "Debtor") pursuant to 11 U.S.C. § 707(b)(3)(B) on the grounds that the totality of the circumstances of the Debtor's financial situation demonstrates that his case is an abuse of the provisions of Chapter 7. Namely, the Debtor obtained new employment shortly before filing bankruptcy that would enable him to repay all, or substantially all, of the $121,185 in unsecured credit card debt that he accumulated before obtaining his new employment.

This matter is presented to the court on a stipulated record. For the reasons stated herein, the court will schedule a further hearing to consider all the circumstances of the Debtor's bankruptcy filing, including his ability to repay a substantial portion of his debts, before determining whether the Debtor's bankruptcy case is abusive under § 707(b)(3)(B).[1]

## I. BACKGROUND

The Debtor is single, with no dependents. He lives in Harpers Ferry, West Virginia in a home that he values at $250,000, but which is encumbered by two deeds of trust in the combined amount of $328,000.

---

[1] The court heard oral argument in this matter on November 9, 2009, in Morgantown West Virginia, at which time the court announced its ruling from the bench. This memorandum opinion memorializes the court's oral ruling.

1

In addition to $121,185 in general unsecured debts that are subject to being discharged, the Debtor owes student loan debts of $79,972, which would likely be excepted from any discharge he might receive.

The Debtor is employed as a project manager at 6K Systems, Inc. His gross annual income is projected to be about $120,000. The median income for a household of one in West Virginia is $37,706. After payroll deductions, the Debtor's net monthly income is $7,602.

On Schedule J, the Debtor's list of current expenditures, the Debtor states that his monthly expenses do not exceed $4,245, which leaves the Debtor with $3,357 in monthly disposable income. The Debtor's greatest expenses are his $2,270 monthly house payment and $600 in monthly transportation expenses.

Due to the artificial peculiarities of means testing under 11 U.S.C. § 707(b)(2), no presumption exists under that subsection that the Debtor's case is abusive based on his ability to pay his debts.

## II. DISCUSSION

Based on the Debtor's actual ability to repay his debts outside of bankruptcy or under another Chapter of the Bankruptcy Code, the USTE asserts that the totality of the circumstances of the Debtor's financial situation demonstrates that his Chapter 7 petition is abusive pursuant to § 707(b)(3)(B).

The Debtor asserts that his case cannot be dismissed based solely on his ability to pay under ss 707(b)(3)(B), and, moreover, he has already passed the ability to pay test of § 707(b)(2); thus, the USTE is not entitled to revisit that issue under the guise of § 707(b)(3)(B).

The well-settled maxim of bankruptcy law is that it affords debtors a "fresh start" – not a "head start." *E.g.*, *Green v. Staples (In re Green)*, 934 F.2d 568, 570 (4th Cir. 1991) (stating that § 707(b) of the Bankruptcy Code allows "a bankruptcy court to deal equitably with the situation in which an unscrupulous debtor seeks to gain the court's assistance in a scheme to take unfair advantage of his creditors."); *Waites v. Braley*, 110 B.R. 211, 215 (E.D. Va. 1990) ("[A]llowing a debtor to escape debts that he has the ability to repay would provide a "head start" rather than the "fresh start" envisioned in Chapter 7."). Bankruptcy discharges are reserved for "'honest but unfortunate debtor[s].'" *Marrama v. Citizens Bank*, 549 U.S. 365, 374 (2007) (citation omitted).

This general policy underlying the Bankruptcy Code reflects the dual purpose of bankruptcy as both a mechanism for debtor relief and for the collection of debts. *E.g.*, Thomas H. Jackson, *The Logic and Limits of Bankruptcy Law*, p.3 (Harvard University Press, 1986), reprinted by Beard Books (2001) (recognizing the dual purpose of bankruptcy law).

For Chapter 7 cases, the balance between affording the honest, but unfortunate, debtor relief and the right of creditors to continue collection action either outside of bankruptcy or through another chapter of the Bankruptcy Code is set forth in 11 U.S.C. § 707. Before October 2005, a bankruptcy court could dismiss or convert a Chapter 7 bankruptcy case if the court determined the filing was a "substantial abuse" of the provisions of Chapter 7. § 707(b) (2004).

In 2005, as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), Pub. L. 109-8, section 707(b) was significantly altered. Among other changes, the standard of "substantial abuse" was replaced by one of simple "abuse"; consequently, by broadening the scope of cause for dismissal, the 2005 Act placed a greater importance on protecting a debtor's creditors than had previously existed. Congress also included certain mandatory presumptions that a case be deemed abusive based solely on a debtor's ability to repay debts under a hard-edged, statutory formula. Section 707(b) now reads, in pertinent part:

> (1) [T]he court . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter. . . .
>
> (2) (A) (i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of--
>       (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $ 6,575, whichever is greater; or
>       (II) $ 10,950.
>     (ii) (I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides . . . .
>                                     . . . .
>     (B) (i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances . . . .
>                                     . . . .

3

(3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider--
    (A) whether the debtor filed the petition in bad faith; or
    (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

§ 707(b)(1-3).

As set forth above, new § 707(b) allows a court to dismiss a Chapter 7 bankruptcy for "abuse" in subsection (1), and then further defines that term in subsections (2) and (3). Subsection (2) is the so-called "means test" whereby a debtor's "current monthly income" (a six-month historical average under § 101(10A)) is reduced by certain actual and artificial expenses to calculate a debtor's disposable income. If the debtor's disposable income meets the statutory threshold, the case is presumed abusive and that presumption may be rebutted by the debtor showing "special circumstances." Although intended to "crack down" on high income debtors who seek to avoid payment of their debts, the ironic result of the means test is that the test is unduly generous considering that its determination of income and expenses are beneficial to the majority of those filing bankruptcy.[2]

Subsection (3) directs the court to consider, in making the "abuse" determination, whether the petition was filed in bad faith or if the totality of the circumstances of the debtor's financial situation demonstrates abuse. Subsection (3) is only applicable when no presumption of abuse arises under subsection (2), or when the presumption under subsection (2) has been rebutted. Obviously,

---

[2] *E.g.*, David Gray Carlson, *Means Testing: The Failed Bankruptcy Revolution of 2005*, 15 Am. Bankr. Inst. L. Rev. 223, 227 (2007) ("If anything, the 2005 means test *encourages abuse*, as that term was defined in pre-BAPCPA case law. It is *more generous* to high income debtors than the old case law of section 707(b). The mechanical test is counter-productive in its effect on bankruptcy abuse, as defined as seeking a discharge in the face of surplus wages.") (emphasis in original); Marianne B. Culhane & Michela M. White, *Catching Can-Pay Debtors: Is the Means Test the Only Way?* 13 Am. Bankr. Inst. L. Rev. 665, 673-77 (2005) (explaining how the means test "lost its teeth"); Hon. Eugene R. Wedoff, *Means Testing in the New 707(b)*, 79 Am. Bankr. L.J. 231, 256-57 (2005) ("[A] plain reading of the statute would allow a deduction of the amounts listed in the Local Standards [for transportation and housing/utilities] even where the debtor's actual expenses are less.").

when a case is presumed abusive under § 707(b)(2), no need exists to resort to an abuse determination under § 707(b)(3). Stated another way, a court has discretion to grant or deny a motion to dismiss a case under § 707(b)(3), but a court must either dismiss or allow conversion of a case when the presumption in § 707(b)(2) is triggered and not rebutted.

Divergent views exist on whether a judge who believes that the § 707(b)(2) means test may have failed to catch an individual abuser may ignore the ability to pay results of § 707(b)(2) and proceed to dismiss the case under § 707(b)(3) based on either bad faith, or the totality of the debtor's financial circumstances, due to the debtor's ability to repay his debts alone.[3]

This court believes that the better view is the one that recognizes that § 707(b)(2) merely creates a presumption of abuse, which, if not rebutted, is conclusive of a finding of abuse. The existence of the presumption created by the "means test is useful because it automatically disqualifies from Chapter 7 those debtors who 'fail' it . . . . The presumption steers such debtors away from Chapter 7 without the need to litigate Section 707(b) motions." *In re Crink*, 402 B.R. 159, 167 (Bankr. M.D.N.C. 2009). The view that the § 707(b)(2) means test is the exclusive ability to pay test unduly elevates "it from a presumption to an actual test for abuse" and misconstrues its function as an "initial filter" that a debtor must pass through before being subject to a full analysis under § 707(b)(3). *Id.* at 168.

A debtor's actual ability to pay debts is a relevant consideration in determining whether abuse is present under § 707(b)(3)(B) because it concerns the totality of the circumstances of a debtor's

---

[3] *Compare* Marianne B. Culhane & Michela M. White, *Catching Can-Pay Debtors: Is the Means Test the Only Way?* 13 Am. Bankr. Inst. L. Rev. 665, 678 (2005) ("We disagree . . . that a judge who thinks the means test is not mean enough may 'fix it' by substituting his or her own more stringent standards of ability to pay and idiosyncratic views of appropriate debts and expenses. In our view, the language of the revised Code, the interaction among its sections, its legislative history, and the need for uniformity in consumer bankruptcy law all support the view that the means test is now the exclusive ability to pay test."); *with* Hon. Eugene R. Wedoff, *Judicial Discretion to Find Abuse Under § 707(b)(3)*, 23-3 Am. Bank. Inst. L.J. 1, 50 (April 2006) (stating that "bankruptcy judges have a duty to consider the actual financial situation of debtors who are not subject to a means-test presumption, that judges should find abuse where debtors can repay a sufficient amount of unsecured debt . . . .").

5

financial situation.[4]  *E.g.*, *Schwenk v. Schwenk (In re Schwenk)*, 411 B.R. 211, 218-19 (Bankr. M.D. Pa. 2009) (ability to pay is one consideration in the totality of the circumstances test); *In re Crink*, 402 B.R. 159, 167 (Bankr. M.D.N.C. 2009) ("It is difficult to envision a situation where the totality of a bankruptcy debtor's financial situation does not include the debtor's ability to repay her debts."); *In re Wolf*, 390 B.R. 825, 833 (Bankr. D.S.C. 2008) ("[T]he majority and better view is that ability to pay is an important part of the consideration of the totality of the circumstances."); *In re Mestemaker*, 359 B.R. 849, 854-55 (Bankr. N.D. Ohio 2007) ("There is no provision in § 707(b) stating that the means test is the only method through which a court may determine whether there is abuse based on a debtor's ability to pay.").  Section 707(b)(2)'s ability to pay test is not rendered

---

[4]  The court recognizes that its holding creates an asymmetry with regard to allowing conversion of a case to Chapter 13.  When a case is converted to Chapter 13 (as opposed to being dismissed or converted to Chapter 11), the debtor has income above the applicable State's median, and a disposable income objection is made under 11 U.S.C. § 1325(b), then the debtor's expenses are determined in accordance with § 707(b)(2); thus, for a debtor in this class who has actual disposable income but a negative amount of disposable income on the artificial means test, the amount payable to unsecured creditors under a confirmable Chapter 13 plan may be zero – the same result achieved in Chapter 7.  *See, e.g.*, *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868 (9th Cir. 2008) (affirming a Chapter 13 plan that paid nothing to unsecured creditors based on the calculations in the means test when the debtor had actual disposable income to pay to her creditors).   Considering that one of the purported goals of the means test is to determine how much a debtor would be required to pay to creditors in Chapter 13, it would seem to make little sense to impose a different ability to pay test under § 707(b)(3) than the one expressed in § 707(b)(2).

Of course, some asymmetry already exists between the means test and the Chapter 13 disposable income test in that expenses allowed for above the median income debtors in Chapter 13 are already more generous that those allowed by the means test. Chapter 13 debtors are entitled to deduct expenses for loan repayments to a pension plan.  § 1322(f).  Under BAPCPA, unlike prior law, § 707(b) abuse cases based on ability to pay do not neatly dovetail with the Chapter 13 disposable income requirement.  *See In re Linn*, No. 07-1593, 2008 Bankr. LEXIS 792 (Bankr. N.D.W. Va. March 10, 2008) (detailing the difference in Chapter 13 between feasibility (i.e., ability to pay) and disposable income (what must be paid under the statutory formula)).  While the court's holding today may exacerbate the differences between a debtor's ability to pay in a § 707(b)(3)(B) totality of the circumstances determination and a disposable income determination under § 1325(b), the court cannot say the result is absurd.  The court's determination of an debtor's ability to pay based on actual income and expenses under a totality of the circumstances test is relevant in the event the case is converted to Chapter 11, and, of course, is highly relevant in determining whether to dismiss a case altogether.

6

superfluous by considering a debtor's ability to pay in § 707(b)(3)(B) because when the § 707(b)(2) means test presumption of abuse is triggered, a court lacks the discretion it would otherwise have to deny a motion to dismiss.

Concluding that the court may consider the Debtor's ability to repay his debts within the context of the USTE's motion to dismiss under 11 U.S.C. § 707(b)(3)(B), however, is merely one circumstance of the Debtor's overall financial situation. Section 707(b)(3)(B) directs that the court must consider the "totality of the circumstances," which, by definition, encompasses both a debtor's ability to pay and other factors. Before the enactment of BAPCPA, the Court of Appeals for the Fourth Circuit had adopted a "totality of the circumstances" test in adjudicating "substantial abuse" cases under former § 707(b). In addition to an examination of a debtor's ability to pay, among the factors to be considered by a court included, but were not limited to:

> (1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;
>
> (2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;
>
> (3) Whether the debtor's proposed family budget is excessive or unreasonable;
>
> (4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and
>
> (5) Whether the petition was filed in good faith.

*Green*, 934 F.2d at 572.[5]

---

[5] The legal landscape on which the Fourth Circuit decided *Green* has significantly changed. When *Green* was decided, § 707(b) contained a presumption that a debtor who filed a Chapter 7 petition should remain in Chapter 7 and the case could be converted or dismissed only if the filing of the bankruptcy case was a substantial abuse of the provisions of Chapter 7. After the enactment of BAPCPA, there is no presumption in favor of the debtor, the standard for conversion or dismissal is lowered to one of simple abuse, and the grounds to dismiss or convert a case under new § 707(b)(3) are divided into either a finding of bad faith, or a determination that the totality of the debtor's financial situation renders the case abusive. By citing to *Green* in this Memorandum Opinion, the court is not stating that *Green* continues to be good law following the changes to § 707; however, to the extent that *Green* listed factors that may have bearing on the totality of the circumstances of the debtor's financial situation, *Green* remains informative. *E.g.*,

7

An analysis of a debtor's ability to pay along with the five other *Green* factors forces a court to consider if there are extraordinary events that may have led to debtor's bankruptcy petition, the debtor's prospects for stable, future employment, the history of consumer purchases, the proposed budget, and the debtor's financial schedules and statements. Considering anything less would not be the "totality of the circumstances."

In this case, the parties have stipulated to certain facts. The Debtor has actual disposable income to repay at least a significant portion of his debts, he is single, he has a relatively high paying job for his locality, and he has a house worth $250,000. While these stipulations are relevant in determining the totality of the circumstances of the Debtor's financial situation, the Debtor indicated at oral argument that he would like the opportunity to present additional evidence on the totality of the circumstances of his financial situation should the court hold – as it has – that § 707(b)(2) is not the exclusive ability to pay test and that the court may consider the debtor's ability to repay debts in making an abuse determination under § 707(b)(3)(B). Therefore, absent a further evidentiary hearing, the court is unable to make the determination of whether the "totality of the circumstances" of the Debtor's financial situation demonstrates abuse under § 707(b)(3)(B).

### III. CONCLUSION

For the above stated reasons, the court will defer a final ruling on the USTE's motion to dismiss until after an evidentiary hearing is conducted whereby the Debtor and the USTE have a full opportunity to present evidence and testimony to the court regarding the totality of the circumstances of the debtor's financial situation.

---

*In re Calhoun*, 396 B.R. 270 (Bankr. D.S.C. 2008), *aff'd*, No. 09-822 (D.C.S. May 26, 2009) (considering the *Green* factors as they relate to the totality of the debtor's financial circumstances under § 707(b)(3)(B)).